UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

BORISH JENKINS and JOWONNA EVANS,

 Plaintiffs,

-VS-

VERIZON WIRELESS PERSONAL
COMMUNICATIONS LP and MRS
ASSOCIATES, INC.,

 Defendants.
_____/

CASE NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW Plaintiffs, Borish Jenkins ("Borish") and Jowonna Evans ("Jowonna") (collectively "Plaintiffs"), by and through the undersigned counsel, and sues Defendant, Verizon Wireless Personal Communications LP ("Verizon") and MRS Associates, Inc. ("MRS") (collectively "Defendants"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Verizon and MRS from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014."
https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of

47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Chatham County, Georgia. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

### FACTUAL ALLEGATIONS

9. Plaintiffs are natural persons, and citizens of the State of Georgia, residing in Chatham County, Georgia.

10. Plaintiffs are the "alleged debtors."

11. Plaintiffs are the "called parties." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

12. Defendant, Verizon, is a corporation conducting business in the State of Georgia through its registered agent CT Corporation Systems located at 289 South Culver St. Lawrenceville, GA 30046-4805.

13. Defendant, MRS, is a corporation with its principal place of business located at 1930 Olney Ave., Cherry Hill, NJ 08003 and which conducts business in the State of Georgia.

14. MRS is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6).

15. The debt that is the subject matter of this complaint is a "consumer debt" as defined by U.S.C. § 1692(a)(5).

16. Verizon called Plaintiffs on Plaintiffs' cellular telephone approximately one hundred (100) times.

17. MRS called Plaintiffs on Plaintiffs' cellular telephone approximately fifty (50) times in an attempt to collect a debt.

18. Verizon attempted to collect an alleged debt from the Plaintiffs by this campaign of telephone calls.

19. MRS attempted to collect an alleged debt from the Plaintiffs by this campaign of telephone calls.

20. Verizon intentionally harassed and abused Plaintiffs on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

21. MRS intentionally harassed and abused Plaintiffs on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

22. Upon information and belief, some or all of the calls that Verizon made to Plaintiffs' cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiffs will testify that they knew it was an autodialer because of the vast number of calls they received and because they heard a pause when they answered their phone before a voice came on the line from Verizon.

23. Upon information and belief, some or all of the calls that MRS made to Plaintiffs' cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiffs will testify that they knew it was an autodialer because of the vast number of calls they received and because they heard a pause when they answered their phone before a voice came on the line from MRS.

24. Plaintiffs are the subscribers, regular users and carriers of the cellular telephone number (912) ***-5621, and were the called parties and recipients of Verizon and MRS' calls.

25. Verizon and MRS placed an exorbitant number of calls to Plaintiffs' cellular telephone (912) ***-5621 in an attempt to reach an individual known only as "Natalia Condelario."

26. Plaintiffs do not currently know, nor have ever known, an individual by the name of "Natalia Condelario."

27. Plaintiffs do not currently have any account or business dealings with Verizon or MRS.

28. On several occasions over the last four (4) years, Plaintiffs instructed Verizon and MRS agent(s) to stop calling their cellular telephone.

29. On or about the beginning of March, 2018, Borish answered an automated call from Verizon and held on the line to speak to an agent. Upon being informed

Verizon was looking for a "Natalia Condelario," Borish informed the agent he does not currently know, nor has ever known, such a person and to please stop calling. The Verizon representative responded that they would add Borish's cell phone number to their do not call list.

30. During said early March 2018 conversation between Borish and Verizon's agent, Borish clearly informed Verizon that they were calling the incorrect number and that they had no permission to call said number.

31. Shortly after said initial March 2018, the calls from Verizon continued and a few days later Borish again answered an automated call from Verizon and held on the line to speak to an agent. Upon an agent getting on the line Borish again explained that he does not currently know, nor has ever known, an individual known as "Natalia Condelario" and to please stop calling. For a second time Verizon's agent responded that they would add Borish's cell phone to their do not call list.

32. Despite clearly informing Verizon on two occasions on or about March 2018 that it was calling the incorrect person and to stop calling, Verizon continued to placed automated calls to Plaintiffs' cell phone.

33. Due to the volume of automated calls received from Verizon, Plaintiffs were not able to properly catalogue each and every call received, however the following is a small sampling of the calls received:

      i)      March 15, 2018 at 8:40 AM

      ii)     March 15, 2018 at 4:21 PM

      iii)    March 16, 2018 at 8:41 AM

      iv)      March 17, 2018 at 1:21 PM

      v)      March 17, 2018 at 5:31 PM

      vi)      March 19, 2018 at 11:36 AM

      vii)      March 20, 2018 at 8:37 AM

      viii)      March 20, 2018 at 4:54 PM

      ix)      March 21, 2018 at 8:41 AM

      x)      March 22, 2018 at 8:37 AM

34. Beginning on or about May, 2018, MRS began placing automated calls to Plaintiffs' cellular telephone on behalf of Verizon attempting to contact a "Natalia Condelario."

35. On or about early May, 2018, Borish answered an automated call from MRS, held on the line until an agent answered, and informed said agent that he does not know a "Natalia Condelario" and to stop calling.

36. During said May 2018 conversation, Borish clearly informed MRS that they were dialing the incorrect number and that they had no permission to call said number.

37. Despite clearly informing MRS to cease calling, MRS continued to placed automated calls to Plaintiff's cellular telephone.

38. On or about June 18, 2018, Borish again answered an automated call from MRS and held on the line until an agent answered. Borish again informed MRS' agent that he does not know a "Natalia Condelario" and to stop calling and take his number out of their system.

39. Due to the volume of automated calls received from MRS, Plaintiffs were not able to properly catalogue each and every call received, however the following is a small sampling of the calls received:

i) May 1, 2018 at 11:59 AM

ii) May 2, 2018 at 11:06 AM

iii) May 8, 2018 at 9:47 AM

iv) May 14, 2018 at 10:07 AM

v) May 15, 2018 at 2:30 PM

vi) May 18, 2018 at 9:18 AM

vii) May 21, 2018 at 8:41 AM

viii) May 22, 2018 at 8:46 AM

ix) May 22, 2018 at 1:52 PM

40. Verizon and MRS have corporate policies to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to the Plaintiffs' cellular telephone in this case.

41. Verizon and MRS have corporate policies to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiffs' cellular telephone in this case, with no way for the consumer, or Verizon or MRS to remove the number.

42. Verizon and MRS have corporate policies structured as to continue to call individuals like the Plaintiffs, despite these individuals explaining to Verizon and MRS they wish for the calls to stop.

43. Verizon and MRS have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

44. Verizon and MRS have numerous complaints against them across the country asserting that their automatic telephone dialing systems continue to call despite being requested to stop.

45. Verizon and MRS have had numerous complaints from consumers against them across the country asking to not be called, however Verizon and MRS continue to call the consumers.

46. Verizon's and MRS' corporate policies provided no means for the Plaintiffs to have their number removed from the call lists.

47. Verizon and MRS have corporate policies to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

48. None of Verizon's or MRS' telephone calls placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

49. Verizon and MRS willfully and/or knowingly violated the TCPA with respect to the Plaintiffs.

50. From each and every call placed without express consent by Verizon and MRS to Plaintiffs' cell phone, Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

51. From each and every call without express consent placed by Verizon and MRS to Plaintiffs' cell phone, Plaintiffs suffered the injury of the occupation of their cellular telephone line and cellular phone by unwelcome calls, making the phone

unavailable for legitimate callers or outgoing calls while the phone was ringing from Verizon's and MRS' calls.

52. From each and every call placed without express consent by Verizon and MRS to Plaintiffs' cell phone, Plaintiffs suffered the injury of unnecessary expenditure of their time. For calls answered, the time they spent on the call was unnecessary as they had repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiffs had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular phone, which are designed to inform the user of important missed communications.

53. Each and every call placed without express consent by Verizon and MRS to Plaintiffs' cell phone was an injury in the form of a nuisance and annoyance to Plaintiffs. For calls that were answered, Plaintiffs had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular phone, which are designed to inform the user of important missed communications.

54. Each and every call placed without express consent by Verizon and MRS to Plaintiffs' cell phone resulted in the injury of unnecessary expenditure of Plaintiffs' cell phone's battery power.

55. Each and every call placed without express consent by Verizon and MRS to Plaintiffs' cell phone where a voice message was left which occupied space in Plaintiffs' phone or network.

56. Each and every call placed without express consent by Verizon and MRS to Plaintiffs' cell phone resulted in the injury of a trespass to Plaintiffs' chattel, namely their cellular phone and their cellular phone services.

57. As a result of the calls described above, Plaintiffs suffered an invasion of privacy. Borish and Jowonna were also affected in a personal and individualized way by stress, anxiety, and aggravation.

## COUNT I
### (Violation of the TCPA)
### As to MRS Associates, Inc

58. Plaintiffs fully incorporate and reallege paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

59. MRS willfully violated the TCPA with respect to the Plaintiffs, especially for each of the auto-dialer calls made to Plaintiffs' cellular telephone after Plaintiffs notified MRS that he wished for the calls to stop.

60. MRS repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against MRS for statutory damages, punitive damages, actual

damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the TCPA)
### As to Verizon Wireless Personal Communications LP

61. Plaintiffs fully incorporate and reallege paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

62. Verizon willfully violated the TCPA with respect to the Plaintiffs, especially for each of the auto-dialer calls made to Plaintiffs' cellular telephone after Plaintiffs notified MRS that he wished for the calls to stop.

63. Verizon repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against Verizon for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FCCPA)
### As to MRS Associates, Inc.

64. Plaintiffs fully incorporate and reallege paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

65. At all times relevant to this action MRS is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

66. MRS has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

67. MRS has violated Florida Statute §559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

68. MRS has violated Florida Statute §559.72(9) by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

69. MRS' actions have directly and proximately resulted in Plaintiffs' prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against MRS for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT IV
**(Violation of the FCCPA)**
**As to Verizon Wireless Personal Communications LP**

70. Plaintiffs fully incorporate and reallege paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

71. At all times relevant to this action Verizon is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

72. Verizon has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

73. Verizon has violated Florida Statute §559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

74. Verizon has violated Florida Statute §559.72(9) by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

75. Verizon's actions have directly and proximately resulted in Plaintiffs' prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Verizon for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT V
### (Violation of the FDCPA)
### As to MRS Associates, Inc

76. Plaintiffs fully incorporates and realleges paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

77.     At all times relevant to this action MRS is subject to and must abide by 15 U.S.C. § 1692 *et seq*.

78.     MRS has violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

79.     MRS has violated 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

80.     MRS has violated 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against MRS for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

    Respectfully submitted,

    */s/ Octavio Gomez*

---

Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 223-5402
TGomez@ForThePeople.com
Georgia Bar #: 617963
Attorney for Plaintiff